IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **MILTON JOHNSON** § | |
| § | |
| *Plaintiff,* § | |
| v. § | **CIVIL ACTION NO.: 4:16-cv-3712** |
| § | |
| § | **JURY DEMANDED** |
| **K & S RESTAURANTS, INC.** § | |
| **SONIC CORP., and SONIC INDUSTRIES** § | |
| **LLC** § | |
| § | |
| *Defendant.* § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES,** Milton Johnson ("Plaintiff" or "Johnson") and files this his Original Complaint complaining of and about K & S Restaurants, Inc., Sonic Industries LLC, and Sonic Corp., (collectively referred to herein as "Defendants") and for cause of action will show to the Court the following:

### I. Parties

1. Plaintiff is an individual residing in Webster, Harris County, Texas. Plaintiff is a former employee of the Sonic Drive-In in Webster, Texas.

2. Defendant, K & S Restaurants, Inc. is a domestic for-profit Corporation. Defendant may be served with notice of this suit by serving its registered agent: Kenneth W. Watford, 12681 State Highway 30, College Station, Texas 77845. Plaintiff has served Defendant with a request for waiver of summons at this time.

3. Defendant, Sonic Industries LLC is a foreign limited liability company.  Defendant may be served with notice of this suite by serving its registered agent: Corporation Service Company

d/b/a CSC-Lawyers Incorporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas . Plaintiff has served Defendant with a request for waiver of summons at this time.

4.  Defendant Sonic Corp. is a domestic for-profit Corporation. Defendant may be served with notice of this suit by serving its registered agent 300 Johnny Bench Drive, Oklahoma City, OK 73104. Plaintiff has served Defendant with a request for waiver of summons at this time.

## II. Jurisdiction and Venue

5.  This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. 216(b) as this case presents federal questions.

6.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1331 and 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and it is in this district in which Defendant's principal place of business is located.

## III.     Nature of Claims

7.  This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), to correct and recover for Defendant's unlawful employment practices on the basis of Plaintiff's sex (male) and Plaintiff's protected activities involving complaints of sex discrimination.

## IV. Condition Precedent

8.  Plaintiff has complied with all condition precedents before filing suit. On or about January 29, 2016, Plaintiff filed a charge of sex (male) discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). On September 22, 2016, Plaintiff received his Notice of Right to Sue from the EEOC. Plaintiff hereby files this Original Complaint within ninety (90) days of receiving his Notice of Right to Sue. A copy of the Notice of the Right to Sue is attached as Exhibit A.

## V.  Facts

9. Plaintiff began his employment at Defendants' Webster location in September 2013. Prior to September 2013, Johnson worked at another Sonic Drive-In location in Houston.

10. From day one of his employment with Defendants' Webster location, Johnson was forced to endure a hostile work environment based upon pervasive sexual harassment and racially discriminatory comments. On his first day, Shift Manager Steven Vorderbruegge ("Manager Vorderbruegge"), a white male in his thirties, asked Johnson if he was "gay." Although Johnson was stunned by Mr. Vorderbruegge's question, he still wanted to make a good impression on his first day of work, and calmly replied, "No." Manager Vorderbruegge persisted with his inappropriate and harassing questions, by asking Milton, "How do you know? Have you tried it before?" That same day, Johnson noticed Manager Vorderbruegge inappropriately touch other male employees' buttocks. Johnson considered himself lucky Manager Vorderbruegge had not touched him in that manner, but after only one week, Manager Vorderbruegge began inappropriately touching him.

11. Manager Vorderbruegge began touching Milton, a seventeen year old minor at the time, over his clothing. On one such occasion, Manager Vorderbruegge actually stuck his fingers in between Milton's buttocks, and fondled Milton's anus. Johnsonimmediately told Manager Vorderbruegge to stop.  However, Manager Vorderbruegge did not stop.  Manager Vorderbruegge subjected numerous employees—from young and vulnerable teenagers, like Milton, to older managers—to this inappropriate, sexual act. Manager Vorderbruegge's inappropriate act of fondling male's anuses became so ubiquitous among employees that the employees dubbed it the "chili bowl." Johnson even witnessed Manager Vorderbruegge commit this same act on Shift Manager Chance Davis ("Manager Davis"). Although Manager Davis told Manager Vorderbruegge to stop touching him, he continued to do so on several more occasions.

3

Manager Davis also witnessed Manager Vorderbruegge "chili bowl" other teenage employees, but said nothing.

12.     Moreover, Manager Vorderbruegge sexually harassed Johnson and other employees in various ways.  Every day that Johnson worked for Manager Vorderbruegge, Johnson was either victimized directly by him or he witnessed Manager Vorderbruegge victimize others.  On several occasions, while Johnson was sitting, Manager Vorderbruegge would stand hovering over Milton.  Manager Vorderbruegge would then position himself so that his stomach was pressed against Milton's shoulder and his penis pressed against Milton's leg.  Manager Vorderbruegge committed this same act to other employees as well. He would also rub Milton's and other employees' ears.  When Johnson and the other employees told him to stop, Manager Vorderbruegge would then tell them, "I thought we were friends."  Manager Vorderbruegge would also pull his pants tight around his penis and invite male and female  employees to "rate it on a scale of one to ten."  On several occasions, Manager Vorderbruegge would tell Johnson and other employees that he had a "three foot dick" that weighed "three pounds, nine ounces."

13.     Manager Vorderbruegge, not only subjected Johnson and other employees to offensive contact and inappropriate comments with his genitals, but he also told extremely offensive racist "jokes" and "jokes" about pedophilia. One such "joke" Manager Vorderbruegge told Milton, involved a white trucker hauling bowling balls. The white trucker picked up three black hitchhikers along his route, but made the black hitchhikers sit in the back with the bowling balls. The white trucker got into accident and the black hitchhikers ran away from the truck.  A policeman arrested the white trucker for "hatching *Nigger* eggs."

14.     Another "joke" Manager Vorderbruegge told Johnson and other employees is, "What is the best part about fucking twenty five year olds? There are twenty of them." One other obscene "joke" Manager Vorderbruegge told Johnson is, "What is the best part about getting your dick

4

sucked by a six year old? How big your dick looks in her hand! What is the best part after that? Seeing her break down on the witness stand." These highly offensive, pedophilic "jokes" were told to Johnson and other other employees who were all just teenagers.

15. On February 24, 2014, after months of enduring Manager Vorderbruegge's offensive touching, sexual comments, and racist and pedophilic jokes, Johnson reached his breaking point. Johnson reported Manager Vorderbruegge's behavior to Defendant's General Manager and purported franchise owner, Pete Garcia ("GM Garcia"). GM Garcia claimed he would "put a stop to it," but Manager Vorderbruegge continued to touch Defendants'employees, even increasing his touching of Marvin Martinez, and he constantly subjected all employees to his sexual comments and his racist jokes.

16. Despite GM Garcia's assertions that he would end Manager Vorderbruegge's inappropriate behavior, Manager Vorderbruegge's harassing actions and comments continued unchecked for several months. Johnson then became so exasperated with the hostile and offensive work environment, that on July 20, 2014, Johnson took further action to report Manager Vorderbruegge's conduct.

17. In order to get his paycheck, Johnson and all other employees had to check one of two boxes stating they either witnessed sexual harassment or they had not witnessed sexual harassment. At first, Johnson was perplexed by these statements as he was never required to check such boxes at the other Sonic Drive-In location. Eventually, he asked GM Garcia why he had to check these boxes; and, GM Garcia alluded to having problems in the past and needing to "cover [his] tail."

18. Although the sexual harassment had occurred since day one of Milton's employment with Defendants, and likely long before then, he usually checked the box indicating he had not witnessed sexual harassment—because he was afraid he would not get his paycheck. Johnson–

5

like the other young employees, who for most this is their first foray into the job market – was afraid to check the box indicating he had witnessed sexual harassment. Johnson and the other employees feared they would not be paid if they checked the box stating they witnessed sexual harassment. However, on July 20, 2014, Milton, who was desperate to alleviate himself of the hostile work environment, eventually checked the box stating he had witnessed sexual harassment.

19. Now, it was explained to Johnson that if he checked the box, the Human Resources Department ("HR") would contact him. He waited for seven (7) days for HR to contact him. When they failed to do so, on July 26, 2014, Johnson again took action and called what he thought was Sonic's Corporate phone number, it was actually K & S' phone number. He left a message for anyone in HR to contact him regarding the sexual harassment. Again, he waited another seven days for K & S HR personnel to contact him, but received no response. On August 1, 2014, Johnson called the same number again, left a message again, but again received no response.

20. The next week Johnson gathered with other employees, including Megan Willis, to discuss Manager Vorderbruegge's harassment and how to obtain evidence so that HR would finally conduct an investigation. While some of the employees ultimately declined to be involved, Milton, Megan, and Marvin Martinez decided when they next received their checks, they would all check the box stating they had witnessed sexual harassment.

21. August 5, 2014, was the next payday for employees. Milton, Megan, and Marvin all checked the box indicating they had witnessed sexual harassment. On August 6, 2014, Milton's mother, Ms. Erin Hawkins, confronted GM Garcia about Manager Vorderbruegge's sexual harassment of her son and other employees and his failure to take any action. GM Garcia told Ms. Hawkins that he had notified HR of the problem at an earlier date. On August 7, 2014,

6

Defendants' finally sent HR personnel to interview Milton, Marvin, and Ashlynn Cox regarding their sexual harassment claims. On that same day, after the interviews and after Johnson had complained of the sexual harassment for months, Manager Vorderbruegge was finally terminated.

**VI.   Sex Discrimination and Harassment pursuant to Title VII of the Civil Rights Act of 1964 and the Texas Labor Code**

22.   Plaintiff reasserts and incorporates by reference all of the above-numbered paragraphs. Defendants intentionally engaged in unlawful employment practices involving Plaintiff because of his sex (male). Defendants harassed and discriminated against Plaintiff in connection with the compensation, terms, conditions, or privileges of employment because of Plaintiff's sex (male). Additionally, Defendant limited, segregated, classified Plaintiff in such a manner that deprived Plaintiff of employment opportunities or adversely affects his status because of his sex. Defendant's actions regarding Plaintiff's sex violate Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e-2(a).

23.   Defendants acted with malice or, in the alternative, with reckless indifference to the protected rights of Plaintiff.

**VII.   Retaliation and Hostile Work Environment Pursuant to Title VII of the Civil Rights Act of 1964 and the Texas Labor Code**

24.   Plaintiff reasserts and incorporates by reference all of the above-numbered paragraphs.

25.   Furthermore, Defendants retaliated against Plaintiff in violation of Title VII by taking materially adverse employment actions against him after he reported, opposing, and participating in an investigation of sexual harassment discrimination in violation of 42 U.S.C. § 2000e-3(a).

26.   Defendants intentionally retaliated against Plaintiff by maintaining a work environment that was hostile to Plaintiff because he engaged in protected activities, and the environment was severe and pervasive enough to alter the terms and conditions of his employment.

27. As a result of Defendants' actions, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in probability will continue to suffer in the future.

## VIII. Race Discrimination and Hostile Work Environment Pursuant to Title VII of the Civil Rights Act of 1964 and the Texas Labor Code

28. Plaintiff reasserts and incorporates by reference all the above-numbered paragraphs.

29. Defendants intentionally engaged in unlawful employment practices involving Plaintiff because of his race.

30. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive him of any employment opportunity or adversely affect his status because of Plaintiff's race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

## IX. Jury Demand

31. Plaintiff hereby demands a trial by jury and tenders the jury fee.

## X. Prayer

32. Plaintiff sustained damages as a result of the actions and/or omissions of Defendant described herein. Accordingly, for the reasons set forth above, Plaintiff respectfully prays that the Defendant be cited to appear and answer herein, and for the following relief:

    a. Lost wages less any interim earnings;

    b. Front pay damages;

    c. Liquidated damages;

    d. Compensatory damages;

e. Punitive damages;

f. an award of pre-judgment and post-judgment interest on all amounts awarded at the highest rate allowable by law;

g. For reasonable attorneys' fees and costs; and

h. all such other and further relief to which Plaintiff may show himself to be justly entitled in law or in equity.

Respectfully Submitted,

By: /s/*Milton Johnson*
Milton Johnson, Pro Se
2802 W. Bay Area
Webster, TX 77598
(832) 290-2598

9